IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Allen Wright, | ) | C/A No.: 1:11-2199-TLW-SVH |
| Plaintiff, | ) | |
| vs. | ) | |
| Jason Webber, RL Turner, Tim Riley, Ann Hallman, Mary Coleman, Dennis Patterson, Christine Thompson, Gary Lane, Major Parrish, Mrs. Middlebrooks, Debra Maness, Mary McCabe, Lt. Bates, Mrs. Whitner, Jerry Alexander, Principal Morrow, Michael Fowler, P. Crider, | ) | REPORT AND RECOMMENDATION |
| Defendants. | ) | |

Plaintiff, proceeding *pro se*, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at Perry Correctional Institution ("PCI") and Tyger River Correctional Institution ("TRCI"). This matter is before the court on Defendants' Motion for Summary Judgment. [Entry #76]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion is dispositive, this Report and Recommendation is entered for review by the district judge.

I.  Factual Background

Plaintiff asserts numerous claims including being prohibited from presenting a defense at a disciplinary hearing, wrongful conviction of discipline charges, and illegal confinement. [Entry #1]. He also asserts many conditions-of-confinement claims including denial of access to the courts; failure to properly process grievances; denial of showers and

out-of-cell recreation; denial of hygiene items; and being forced to expose his genitals to the opposite sex. *Id.* 9–17. Plaintiff seeks compensatory damages, punitive damages, and injunctive relief. *Id.* at 19–20.

Defendants filed their motion for summary judgment on February 14, 2012. [Entry #76]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #77]. Plaintiff was granted an extension of time to respond until April 18, 2012, in order to complete discovery. [Entry #88]. Although Plaintiff filed documents purporting to relate to Defendants' motion for summary judgment prior to the March 29, 2012 deadline for discovery [Entry #85, #94], his responses are related to discovery and are not substantively related to the motion for summary judgment. He filed no supplemental response to the motion after the expiration of the discovery deadline. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant Defendants' motion for summary judgment.

II.   Discussion

    A.   Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B.  Analysis

   1.  Disciplinary Charges

Plaintiff first presents claims related to two disciplinary charges. He claims that defendant Webber falsified an incident report and perjured himself at the disciplinary hearing. [Entry #1 at 4–8]. He also claims that defendant Turner, the disciplinary hearing officer, rendered an arbitrary and capricious guilty verdict on one occasion, and deprived him of a right to present a defense on another occasion. *Id*. He also alleges that defendant Riley knew of his illegal confinement as a result of the disciplinary charge and did nothing. *Id*.

According to Defendants, during a contraband search at TRCI, members of the search team contacted Webber, who was the contraband officer at TRCI at the time, to Plaintiff's cell where they had found a cell phone and charger hidden in a typewriter. [Entry #76-8]. Webber avers that Plaintiff verbally acknowledged that the cell phone belonged to him. *Id*. According to Webber, he then completed an incident report charging Plaintiff with Possession of a Cell Phone or Other Type of Communication Equipment and he testified at the disciplinary hearing related to the charge. *Id*. At the hearing, Plaintiff denied ownership of the cell phone, but did acknowledge that he owned the typewriter in which the cell phone was found. *Id*. Plaintiff was found guilty of the disciplinary offense. *Id*.

According to Defendants, the other disciplinary hearing at issue concerns an incident that occurred on February 23, 2010. In response to Plaintiff's grievance alleging he was not receiving access to adequate legal materials, defendant Thompson met with him to investigate, during which time Plaintiff began to pull out various legal materials. [Entry

#76-3]. According to Thompson, it appeared Plaintiff had more than the three items from the law library allowed for inmates in the SMU. *Id*. She therefore requested that officers hold the items and contacted defendant McCabe, the librarian, to determine what items were signed out to Plaintiff. *Id*. McCabe reviewed the materials and determined that Plaintiff had three items checked out of the law library in his name, but had five items from the law library in his possession. *Id*. She determined that the additional two items were missing from the law library, had not been checked out to Plaintiff, and were not supposed to be in his possession. *Id*.

McCabe prepared an incident report and Plaintiff's library privileges were suspended for 30 days. [Entry #76-11]. Defendant Parrish placed disciplinary charges against Plaintiff related to the incident. *Id*. According to Turner, Plaintiff became argumentative and disruptive at the disciplinary hearing. *Id*. He avers that Plaintiff continued the disruptive behavior after he gave Plaintiff three warnings, and Plaintiff was therefore removed from the hearing. *Id*. According to Turner, the hearing went forward, as postponing a hearing because of an inmate's behavior would allow an inmate to manipulate the hearing process. *Id*. Turner avers that Plaintiff had stated his position prior to being removed from the hearing. *Id*. Plaintiff was ultimately found guilty of the charge. *Id*.

Plaintiff's claims are based on the resulting sanctions of being placed in the SMU, the conditions related to the SMU, loss of personal property (his typewriter), and loss of library privileges for 30 days. First, the court notes that while Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits, he is not actually entitled to a due process hearing every time action is taken to

control his behavior. *See generally, Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Sandin v. Connor*, 515 U.S. 472, 478 (1995) (the "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner").

Plaintiff does not allege any loss of good-time credits. Rather, Plaintiff alleges the hearings were arbitrary and capricious and that Defendants perjured themselves in preparing the incident report and testifying at the hearings. However, Plaintiff provides no specifics regarding what testimony was allegedly untrue. Additionally, although Plaintiff alleges he was not allowed to present a defense, which could be considered a *Wolff* violation, he has not disputed Defendants' factual contentions that he was disruptive at the disciplinary hearings. Furthermore, Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. *See Slezak v. Evatt*, 21 F.3d 590 (4th Cir. 1994) (the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed); *Ordaz v. Lynaugh*, No. 93-4290, 1994 WL 144882, *2 (5th Cir. 1994) ("*Wolff* ... does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges.").

Therefore, in order to state a § 1983 claim for the action alleged, Plaintiff would have to present evidence sufficient to show that Defendants' decision in his case was arbitrary, capricious, or based on some other unlawful motive. *See generally*, *Sandin*, 515 U.S. at 486;

*Crowe v. Leeke*, 259 S.E.2d 614, 615 (S.C. 1979). Plaintiff has presented no such evidence. Thus, Defendants are entitled to summary judgment on this claim.

### 2. Grievance Procedure

Plaintiff alleges defendants Hallman, Coleman, and Thompson have violated his constitutional rights by failing to respond to his grievances or by delaying responses to his grievances. [Entry #1 at 7–10]. Plaintiff also claims his rights were violated by Bates for failing to give him enough inmate-to-staff forms. A prisoner has no constitutional right to a grievance procedure. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *Daye v. Rubenstein*, No. 10–6938, 2011 WL 917248 at *2 (4th Cir. March 17, 2011); *Ashann–Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D.Va. 2000) ("[A] prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Therefore, Defendants are entitled to summary judgment with regard to Plaintiff's claims related to his grievances.

### 3. Legal Materials

Plaintiff also claims that defendants Middlebrooks, Alexander, McCabe, Crider, Morrow, and Maness have interfered with his access to the courts. [Entry #1 at 12–13, 16–17]. Specifically, Plaintiff claims that McCabe and Morrow interfered with his access to the courts because they authorized the seizure of his legal materials. *Id*. According to Defendants, McCabe discovered Plaintiff had five items from the law library in his possession, although he is allowed only three. [Entry #76-11]. Additionally, she determined that two of the items had not been checked out by Plaintiff. As discussed above, McCabe prepared an incident report concerning the matter and Plaintiff was suspended from

accessing the law library for a period of 30 days because of his actions. Although Plaintiff contends that the denial of access to the law library caused him to miss an appeal deadline, he provides no details regarding the appeal, such as the case number and whether he requested and was denied an extension in the matter. [Entry #1 at 13].

Plaintiff claims that defendant Middlebrooks refused to issue him writing materials and legal envelopes and that defendant Alexander told him he needed special permission to obtain such materials. [Entry #1 at 12]. Plaintiff has provided no specific dates or instances in which he alleges Middlebrooks or Alexander denied him legal materials.[1] Additionally, Plaintiff provides no alleged damages as a result of the alleged failure to provide him adequate legal supplies.

Plaintiff also claims that defendant Crider refused to allow him to order the Lawyers Referral Guide, the ALS, and the Litigation Manual. [Entry #1 at 16–17]. Crider is the Mailroom Director at TRCI and stated that he has no involvement with providing legal supplies to inmates. [Entry #76-9]. Although Crider does not recall denying Plaintiff with legal materials, he also avers that Plaintiff would not have been allowed to purchase the items requested and have them in his possession while he was housed in SMU pursuant to SCDC policy. *Id*.

Finally Plaintiff sues defendant Maness alleging that her instructions caused his legal mail, which he requested to be certified, to be lost. [Entry #1 at 12]. Plaintiff provides no

---

[1] Although Defendants' motion references an affidavit by defendant Middlebrooks, it is not attached to the motion. Regardless, Plaintiff has not set forth sufficiently specific allegations or set forth a specific incident in which he was prejudiced in a legal matter by Middlebrooks' alleged denial of legal materials and therefore cannot withstand summary judgment on this claim.

further details. Plaintiff's allegations are insufficient to withstand summary judgment, as he has not stated a constitutional claim. It is therefore recommended that Defendants be granted summary judgment regarding Plaintiff's claims of denial of access to the courts.

### 4. Transfer to a Higher Security Prison

Plaintiff sues defendant Patterson for authorizing a transfer to a higher security prison in retaliation for Plaintiff's exercise of his constitutional rights. [Entry #1 at 9]. Plaintiff provides no further details about the alleged retaliation. According to Patterson, he transferred Plaintiff from TRCI to PCI to allow him to be returned to general population more quickly. [Entry #76-5]. Regardless, Plaintiff has no right to be housed at a particular correctional institution. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ange v. Paderick*, 521 F.2d 1066 (4th Cir. 1975); *Lyons v. Clark*, 694 F.Supp. 184, 187 (E.D.Va. 1988) (collecting cases), *affirmed*, 887 F.2d 1080 (4th Cir. 1989) [Table]. In other words, the placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review unless state or federal law places limitations on official discretion. *Hayes v. Thompson*, 726 F.2d 1015, 1016-17 & n. 1 (4th Cir. 1984) (collecting cases). Although Plaintiff contends he was transferred for retaliatory reasons, such vague allegations are insufficient to withstand summary judgment, and the undersigned recommends Defendants be granted summary judgment on this claim.

### 5. Denial of Showers and Recreation

Plaintiff claims that defendant Bates denied him showers, though he does not specify when this denial occurred. [Entry #1 at 14]. He further claims that Bates made him stand in

showers soiled with feces and urine while his cell was being painted and forced him to shower and shave within ten minutes without a mirror. *Id*. According to Defendants, inmates in SMU were generally allowed to shower three times per week. [Entry #76-6]. If an inmate is disruptive, refuses to be handcuffed or searched, or makes threats toward an officer, then he may be denied showers, but this decision would be made depending on the inmate's actions on the day of the shower. *Id*. Bates further averred that to the best of his recollection, Plaintiff showered on a regular basis. In addition, Plaintiff had soap and a sink in his cell and could have washed himself in his cell if necessary. *Id*. According to Bates, mirrors are no longer provided for inmates in the SMU because they were repeatedly broken and the fragments used as weapons. *Id*. Finally, Bates also avers that the showers are cleaned on a daily basis and he is not aware of an inmate being required to remain in a shower contaminated with feces and urine. *Id*.

Plaintiff also claims that he was denied outside recreation for as long as seven consecutive weeks. [Entry #1 at 14]. According to Bates, inmates housed in SMU were generally provided outside recreation for one hour a day, five days per week. [Entry #76-6]. However, Bates recalls that inmates in the SMU were not allowed outside recreation for several weeks while the chemical munitions system, which is used to control a large number of inmates, was being repaired. *Id*. Though inmates were not allowed outside recreation at this time, Thompson provided inmates a list of exercises they could perform in their cells during this time. *Id*.

"[I]n certain circumstances, restricting inmates' opportunities for physical exercise constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Clay v.*

*Miller*, 626 F.2d 345, 347 (4th Cir. 1980). The Fourth Circuit has held that in order to sustain a § 1983 claim for lack of exercise, a plaintiff must produce evidence "that he has sustained a[] serious or significant physical or emotional injury as a result of these conditions." *Strickler*, 989 at 1381. Plaintiff has not made an allegation of physical or emotional injury related to a lack of exercise, nor has he sent forth evidence of the same. Plaintiff's allegations do not rise to a constitutional violation and Defendants are therefore entitled to summary judgment on these claims.

6. Food

Plaintiff sues defendant Fowler based on an allegation that he allows food to be served on wet trays and serves Plaintiff gravy on his rice. [Entry #1 at 16].[2] Plaintiff makes no allegation that Fowler deliberately allowed wet trays. For instance, Plaintiff does not indicate he complained about the wet trays and received no response. As negligence is not actionable in a § 1983 action, Plaintiff's claims related to the wet trays, without greater specificity or detail, are insufficient to withstand summary judgment. Additionally, absent some dietary restriction, Plaintiff has no constitutional entitlement to receiving his rice without gravy. Therefore, Defendants are entitled to summary judgment on this claim.

7. Denial of Hygiene Items

Plaintiff also alleges he has been denied hygiene items, although he does not specify when or what hygiene items he was denied. [Entry 31 at 14–16]. Defendant Whitener was the Commissary Manager at TRCI, but retired from SCDC in December 2010. *Id*. According to Whitener, she sent hygiene items to inmates in SMU once per month and sent

---

[2] Defendants' motion for summary judgment references an affidavit by defendant Fowler, but it does not appear to be attached to their motion and therefore has not been considered.

liquid soap to SMU 2 to 3 times per week. *Id*. Whitener further stated that she did not recall any occasion where inmates were not provided supplies, but she did recall an occasion where the Commissary ran short of liquid soap and, therefore, bars of soap were provided. *Id*. Here, Plaintiff has not set forth sufficient allegations to withstand summary judgment with regard to the alleged denial of hygiene items.

        8.      Involuntary Exposure of his Genitals to Female Officers

Plaintiff next claims that defendants Lane and Parrish have either put in place or upheld a practice that has caused Plaintiff to involuntarily expose his genitals to members of the opposite sex. [Entry #1 at 10–11]. Defendants are not aware of any practice that caused Plaintiff to involuntarily expose his genitals to females. [Entry #76-7]. According to Defendants, when an inmate housed in SMU leaves his cell, including going to the shower, he must be strip-searched for security reasons. *Id*. The strip-search is done by male officers only. *Id*. When SMU inmates travel to the shower, they are allowed to wear their boxers and also have their towel with them. *Id*. Inmates can wrap their towel around their waists, and Defendants are not aware of any circumstance where the inmates would be exposed to female staff members. *Id*. Plaintiff's allegations regarding involuntary exposure of his genitals to female officers, without greater specificity or support, are insufficient to withstand summary judgment.

        9.      Service on Defendants Maness, Coleman, and Alexander

It appears that defendants Maness, Coleman, and Alexander were not properly served in this matter, as the SCDC could not accept service for these individuals. However, even if these defendants had been properly served, Plaintiff's allegations against them are

insufficient to withstand summary judgment as previously detailed herein.

III.     Conclusion and Recommendation

For the foregoing reasons, it is recommended that Defendants' motion for summary judgment be granted [Entry #79] and this case be dismissed with prejudice. If the district judge accepts this recommendation, the remaining motions will be rendered moot.[3]

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 3, 2012  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[3] In recommending Defendants' motion for summary judgment be granted, the undersigned has reviewed Plaintiff's May 2, 2012 motion to compel. As an initial matter, the undersigned notes that the motion was filed over a month after the discovery deadline expired and two weeks after Plaintiff's deadline to respond to Defendants' motion for summary judgment. Notwithstanding the delayed timing of the motion to compel, a ruling on the motion would not allow Plaintiff to survive summary judgment, as Plaintiff has failed to set forth sufficiently specific allegations that if true would set forth a potential claim for summary judgment.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).